### 54495. CLAY et al. v. LITTLEFIELD.

QUILLIAN, Presiding Judge.

This is an appeal from a directed verdict for the plaintiff in an action to recover money paid by plaintiff on a contract for the purchase of a mobile home that plaintiff had assumed from the former owners, Loyd and Barbara Clay, the defendants.

The defendants' mobile home and the one acre lot on which it was situated were offered for sale. Plaintiff agreed to purchase the lot for $3,000, assume payments on the mobile home, and the defendants were to retain the furnishings—including the appliances, in the mobile home. On November 13, 1975, Mrs. Littlefield and the Clays had Universal C.I.T., the finance company who owned the contract for the mobile home, to transfer title from the Clays to Mrs. Littlefield. Thereafter, Mrs. Littlefield made the monthly payments on the contract. The following day they went to an attorney to transfer the title to the land. The attorney advised Mrs. Littlefield

that she should have a title search and survey.

While the survey was being made, Mrs. Littlefield said she received a call from Mrs. Clay asking her "to go to a lawyer to draw up an agreement that they could take the furniture and I asked her if the furniture went with the trailer and she said yes . . . I told her I didn't have any choice that if it came with the trailer she'd have to get permission from C.I.T."

Mr. Clay said that his wife "just wanted to make it legal that she knew we were taking the furniture out of the trailer so we wouldn't get no repercussion later on about the furniture part of the trailer." On cross examination, Mr. Clay admitted that the furniture and appliances were part of the security stated in his contract with C. I. T. He also admitted that he had contacted C. I. T. and asked "if it would be all right to move the furniture out." "They said they would not allow it."

After Mrs. Littlefield refused to honor the request of the Clays and referred them to C. I. T., the Clays contacted a lawyer who wrote a letter to Mrs. Littlefield, dated December 3, 1975, in which he set forth their verbal agreement of sale and stated: "It further appears that you have decided that you will not allow them to retain the furnishings and appliances as their equity in the mobile home which you previously agreed to." He advised her that unless she complied with all of the terms of the previous agreement by December 10, 1975 "they will consider that not only the transfer agreement dated November 13, 1975 is void but all agreements between you concerning this transaction are void because of your failure to comply with your obligations to the Clays."

Mrs. Littlefield retained an attorney who responded to the letter of the Clays' attorney and assured him that Mrs. Littlefield was willing "to conclude the deal when your client can furnish marketable title." He advised him that "we have examined title to the property and find that the descriptions are so vague and indefinite that we cannot ascertain whether or not your client is in a position to pass marketable title at this time. We have accordingly asked for a survey and upon receipt of the survey will require certain corrective instruments in order to see that our client obtains a marketable title. There is no way at

this time your client can pass marketable title under the deed records that exist in Haralson Superior Court. . . Mrs. Littlefield has no objection to Mr. Clay having the furniture that was contemplated that they were to have under the original agreement of the parties. However, in view of the fact that the Clays had mortgaged the property to Universal C. I. T., we feel that it would have to be cleared with them and their permission received before this property is delivered into their possession. . . Until the transaction can be completed as contemplated by the parties, Mrs. Littlefield shall continue to make payments as provided in the contract." Mrs. Littlefield continued to make monthly payments to C.I.T.

Mr. Clay was given about six or seven quitclaim deeds and had them executed and notarized by the people who had to execute them.

The record is not clear about a previous trial involving these same parties and the same subject matter which ended in a mistrial. Defendant's counsel asked Mrs. Littlefield: "Q. Now since we were up here in November you didn't make any more payments on that unit did you? A. No. I didn't." She was asked by her counsel why she stopped. "A. I was advised by Mr. Murphy [her lawyer] here to stop paying. Q. And that was the last time we were in court? A. Right."

Mr. and Mrs. Clay had been in possession of the mobile home prior to the oral agreement in November 1975 and moved on December 26, 1975 after receipt of the letter from Mrs. Littlefield's lawyer and Mrs. Littlefield told him she would take possession when the survey was completed. Mr. Clay was asked: "You never had told her that you moved out? A. No sir. Q. And you never did tell her that you had moved back in? A. No." He left the mobile home locked and retained the key. Mrs. Littlefield made all payments on the mobile home from December 1975 through November 1976 when her attorney advised the court and the defendants that she would not continue to make the payments. She never went into possession of the mobile home. Mr. Clay admitted that all of the payments were credited to the mobile home account and the balance owing on his account for the mobile home was reduced by the amount of the payments made by Mrs. Littlefield.

The prior trial in November 1976 was for possession of the mobile home, and ended in a mistrial, with the Clays remaining in the mobile home.

The trial court directed a verdict for the plaintiff in the amount paid by Mrs. Littlefield on the contract. Defendants bring this appeal. *Held:*

1. The evidence clearly established that the parties entered into a contract which could not be executed because a third party, C.I.T. would not allow the mortgaged property retained by the plaintiffs to be separated from the other mortgaged property — the mobile home. The evidence demanded a finding that plaintiff made monthly payments to the finance company on the mobile home contract, and these payments were credited to the defendants' subsequent account, and when the contract could not be executed because of the fault of a third party (C.I.T.), she was entitled to the return of the money paid on the finance contract which had been credited to the defendants' loan because they had been unjustly enriched in that amount.

An action for unjust enrichment lies when money is paid on the debt of another, with his consent and approval, where the person making the payment was obligated to make the payment, and no consideration or benefit inures to his benefit, and credit for such payments inures to the benefit of the other party. See *Hartley v. Hartley,* 50 Ga. App. 848 (2) (179 SE 245); and *Haupt v. Horvitz,* 31 Ga. App. 203 (1) (120 SE 425).

The trial court did not err in directing a verdict for the plaintiff.

2. There was no error in the admission of plaintiff's Exhibits 6 through 12. Plaintiff was the maker of these checks used to make payments to the mortgagee on the contract of purchase of the mobile home. The evidence was properly identified, was material and relevant for the purpose of establishing the amount the defendants were unjustly enriched.

*Judgment affirmed. Shulman and Banke, JJ., concur.*

ARGUED SEPTEMBER 15, 1977 — DECIDED OCTOBER 11, 1977 — REHEARING DENIED NOVEMBER 22, 1977 — ■

*Marson G. Dunaway, Jr.,* for appellants.

*Murphy, Witcher & Murphy, Michael L. Murphy, Thomas B. Murphy,* for appellee.

ON MOTION FOR REHEARING.

Counsel for defendants allege we failed to treat, rule on or even mention the error contended by appellants that the election of remedies to recover possession depending on reliance on the contract barred the action to recover payments made on the mobile home. This allegation was not enumerated as error, although it was argued as if it had been enumerated. Allegations of error in the brief, but not enumerated cannot be considered. *Slaughter v. Linder,* 122 Ga. App. 144 (2c) (176 SE2d 450).

Counsel for defendants alleged we failed to address and decide the enumerations of errors argued under No. 2 and No. 3 and No. 4. Enumeration of error 2 contends the trial court erred in failing to direct a verdict as plaintiff had shown by her own evidence that she had no case. Enumeration 3 argues that it was error to fail to dismiss "the main bill because her evidence would not support a judgment, and on the contrary demanded a finding that she . . . was in default and not entitled to . . . judgment." Enumeration 4 alleged the court erred in directing a verdict for plaintiff and against appellants.

We held, "[t]he trial court did not err in directing a verdict for the plaintiff." This holding necessarily invokes an adverse ruling on Enumerations 2, 3, and 4 for the defendant. However, we now specifically find that there was no error prejudicial to defendant as to any of the errors enumerated.

*Motion for rehearing denied.*