A91A0034. DEPARTMENT OF MEDICAL ASSISTANCE v. PRESBYTERIAN HOME, INC.

(409 SE2d 881)

BANKE, Presiding Judge.

The Presbyterian Home, Inc., (Presbyterian) provides nursing home services to Medicaid patients in Georgia for which it is reimbursed through a contract with the Georgia Department of Medical Assistance (DMA). By letter dated April 2, 1985, Presbyterian was notified by the DMA that, as the result of a decision of the Grant Appeals Board of the U. S. Department of Health and Human Services disallowing federal reimbursement for certain payments the DMA had previously made to Presbyterian, Presbyterian would be required to refund the DMA $167,591.59. The DMA subsequently recouped this amount through withholdings against current medical assistance reimbursement payments to which Presbyterian would otherwise have been entitled. The DMA's decision in this regard was sustained on appeal to an administrative hearing officer and to the DMA Commissioner but was reversed by the Brooks County Superior Court based on a determination that Presbyterian had accepted the payments in question in "good faith reliance" on prior decisions of the DMA and had "materially changed its position [in] reliance on such" decisions, such that it would be inequitable to require it to make restitution.

The disputed payments were made to Presbyterian for services

rendered to Medicaid patients July 1, 1981, through October 31, 1982. At the beginning of that period, Presbyterian was classified by the DMA as a "hospital-based" facility as opposed to a "free-standing" facility, which meant that it was entitled to reimbursement at a higher rate than would otherwise have been the case. On November 19, 1981, the DMA notified Presbyterian in writing that, beginning December 1, 1981, it would no longer be classified as a hospital-based facility. Presbyterian appealed this decision administratively and on February 18, 1982, was notified by the DMA Commissioner that it was being reclassified as a hospital-based facility retroactive to December 1, 1981. Subsequently, however, the DMA amended its regulations, effective November 1, 1982, to implement a more restrictive definition of the term, "hospital-based facility." Although Presbyterian did not qualify as a hospital-based facility under this new definition, the regulations specified that homes which were already classified as hospital-based would remain so until November 1, 1983. Thus, Presbyterian continued to receive medical assistance payments from the DMA at the hospital-based rate through that date.

In May of 1984, the DMA was notified by the Health Care Financing Administration of the U. S. Department of Health and Human Services that the federal funding it had received for the additional medical assistance payments it had made to Presbyterian for the period from July 1, 1981 through October 31, 1982, based on the latter's classification as a hospital-based facility during that period, was being disallowed retroactively, based on a determination that Presbyterian had not met the federal requirements for a hospital-based facility during that period. After unsuccessfully appealing this decision to the Grant Appeals Board of the U. S. Department of Health and Human Services, the DMA sent Presbyterian the refund demand notice which gave rise to the present litigation. As previously indicated, the refund demand involved only those payments made to Presbyterian from July 1, 1981 through October 31, 1982. No refund was sought for the period from November 1, 1982 through November 1, 1983.

The DMA contends that the superior court erred in ruling that Presbyterian had so changed its position in reliance on its hospital-based classification during the period in question that it would be unjust to require it to refund the monies in question because: (1) This ruling constituted a de novo factual determination which the court, sitting as a court of review, lacked the authority to make; (2) there was no evidence in the record to support such a determination; and (3) the parties' obligations were, in any event, governed by a written contract, thus rendering the application of restitutionary principles inappropriate. *Held*:

1. Generally speaking, "[p]ayments of claims made through igno-

rance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor. . . ." OCGA § 13-1-13. This rule is, however, qualified by the equitable principle that "[r]elief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby." OCGA § 23-2-32 (b). See *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 405 (349 SE2d 368) (1986).

While the parties' contract specified that "the Department shall make no reimbursement for any claim, or portion thereof, for which federal financial participation is not available," it was silent on the subject of what would happen if federal financial participation were disallowed retroactively after such reimbursement had already been made. Clearly, what the state was asserting under these circumstances was not an express right under its contract with Presbyterian but rather an implied contractual right to the return of monies paid by mistake in connection with that contract. Cf. *Matthews v. Neal, Greene & Clark*, 177 Ga. App. 26, 28 (1) (338 SE2d 496) (1985).

" 'There can be no doubt of the state's right to a refund of money paid out through mistake under the time-honored and well recognized principle that one may not retain money or goods which have come into his hands through mistake and which he is not, in good conscience, entitled to retain. (Cits.)' [Cit.] However, ' "(t)he equitable right to restitution from one unjustly enriched at another's expense is terminated or diminished if circumstances have so changed that it would be inequitable to require full restitution." [Cit.]' [Cit.]" *State of Ga. Dept. of Admin. Svcs. v. Pritchett*, 160 Ga. App. 294 (287 SE2d 290) (1981). Based on the application of these principles, we hold that the superior court was correct in its conclusion that the DMA would be estopped from recovering the overpayments it had made to Presbyterian to the extent that the latter had changed its position in reliance on its hospital-based classification in such a manner as to make such restitution inequitable.

2. While the Administrative Procedure Act provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact," it further specifies that "[t]he court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (4) Affected by [an] error of law; [or are] (5) [c]learly erroneous in view of the reliable, probative, and substantive evidence on the whole record. . . ." OCGA § 50-13-19 (h). Cf. *Stevens v. Bd. of Regents*, 129 Ga. App. 347 (199 SE2d 620) (1973).

It is apparent from the record in this case that the DMA has

never attempted to refute Presbyterian's contention, advanced both before the administrative hearing officer and before the superior court, that it materially changed its position in reliance on the hospital-based classification assigned to it by the DMA. Instead, the DMA has consistently taken the position that this issue is irrelevant because its refund claim is grounded on an express contractual right rather than on restitutionary principles. Indeed, in a memorandum to the State Law Department outlining the agency's reasons for its appeal of the 1984 U. S. Department of Health and Human Services decision disallowing federal reimbursement for the payments in question, the DMA's deputy commissioner adopted Presbyterian's position on the detrimental reliance issue, stating: "We further believe that the equitable doctrine of promissory estoppel would apply to Presbyterian. Through no fault of their own, and subsequent to budgeting, planning and fund raising efforts, Presbyterian relied on its classification by the Department as hospital-based. Presbyterian had every right to rely on the Department's cost report instructions, and its classification, and did so properly rely on such to its detriment. To now reverse its classification would be a miscarriage of justice."

Given this admission by the DMA's deputy commissioner, combined with the lack of any evidence tending to refute Presbyterian's contention that it relied to its detriment on the hospital-based classification assigned to it by the DMA, we hold that the superior court was authorized to conclude as a matter of law that the DMA was estopped from recovering the funds in question.

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Pope and Beasley, JJ., concur. Sognier, C. J., Carley, Cooper and Andrews, JJ., dissent.*

CARLEY, Judge, dissenting.

I must respectfully dissent to the majority's affirmance of the superior court's reversal of the administrative decision made by the DMA Commissioner. Although I certainly sympathize with appellee and understand its reluctance to repay a substantial amount of money that it thought it was entitled to receive, the procedural and substantive law applicable to this case mandates a reversal of the superior court's ruling. While there is no doubt that appellee accepted and received the payments "in good faith," it was beyond the superior court's power and authority to find and determine that appellee's acceptance of such payments constituted a good faith *reliance.*

The contract between appellant and appellee specified that "the [appellant] shall make no reimbursement for any claim, or portion thereof, for which federal financial participation is not available. . . ." However, I must respectfully disagree with any restrictive

construction of this contractual provision so as to hold that it did not apply in the event that federal financial participation was disallowed retroactively. Such a conclusion is contrary to the plain meaning and obvious intent and spirit of the parties' contract. It is uncontroverted that based upon the ruling of the federal government, which appellant vigorously opposed on behalf of appellee, there simply was no federal financial participation available.

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . [a]ffected by [an] error of law. . . ." OCGA § 50-13-19 (h) (4). In the instant case, the superior court concluded that the "failure to apply [a certain legal] principle was an error of law" which mandated reversal pursuant to OCGA § 50-13-19 (h) (4). That legal principle was the following: " ' "[T]he equitable right to restitution from one unjustly enriched at another's expense is terminated or diminished if circumstances have so changed that it would be inequitable to require full restitution." [Cit.]' [Cit.]" *State of Ga. Dept. of Admin. Svcs. v. Pritchett*, 160 Ga. App. 294, 295 (287 SE2d 290) (1981).

There has been no affirmative showing that any evidence adduced concerning DMA's estoppel to obtain a refund was not fully considered during the administrative hearing process. See *Francis Egg Farm v. Durrance*, 169 Ga. App. 879 (315 SE2d 436) (1984) (construing OCGA § 34-9-105). Compare *Rowell v. Transport Ins. Co.*, 153 Ga. App. 456 (265 SE2d 364) (1980) (construing OCGA § 34-9-105); *Miller v. Travelers Ins. Co.*, 111 Ga. App. 245, 248 (1) (141 SE2d 223) (1965) (construing OCGA § 34-9-105). Estoppel is a question for the trior of fact unless it can be unequivocally established. *Smithloff v. Benson*, 173 Ga. App. 870, 874 (3) (328 SE2d 759) (1985).The evidence did not demand a finding in appellee's favor as to the estoppel issue. See *Graham v. Hogan*, 185 Ga. App. 842 (366 SE2d 219) (1988). There is absolutely no evidence that appellee would be prejudiced by being required to make full restitution other than that it "had spent the money of the [state] which had been mistakenly advanced (which generally does *not* constitute 'prejudice.' [Cit.])." (Emphasis supplied.) *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 406 (349 SE2d 368) (1986).

Accordingly, the superior court erred in basing its reversal of DMA's decision on the purported administrative "failure" to have applied the legal principle of estoppel. There was no reversible administrative "failure" to apply that legal principle, but there was, instead, a controlling administrative factual determination as to the applicability of that legal principle based upon sufficient evidence. The superior

court was without authority to substitute its judgment for that of the administrative agency. *Georgia Real Estate Comm. v. Burnette*, 243 Ga. 516 (2) (255 SE2d 38) (1979). Because I believe that the superior court had no authority to reverse the administrative determination, I must respectfully dissent.

I am authorized to state that Chief Judge Sognier, Judge Cooper and Judge Andrews join in this dissent.

DECIDED JULY 31, 1991 —
RECONSIDERATION DENIED SEPTEMBER 3, 1991 —

*Michael J. Bowers, Attorney General, William C. Joy, Kathryn L. Allen, Senior Assistant Attorneys General*, for appellant.
*Walter H. New*, for appellee.