A01A1329. HOLLIFIELD v. MONTE VISTA BIBLICAL GARDENS, INC. et al.
(553 SE2d 662)

ELDRIDGE, Judge.
James E. Hollifield owns land adjacent to lands owned by Monte Vista Biblical Gardens, Inc. and by Jack Frost II; Hollifield built a wall, driveway, and started a building encroaching on their land. Monte Vista and Frost brought an action for ejectment and trespass against Hollifield. Hollifield answered and countersued for improvements that he had made to their lands. On motions for summary judgment, the trial judge granted a writ of ejectment against Hollifield, reserving the issue of damages and attorney fees for jury trial, and granted summary judgment against Hollifield on his counterclaim for improvements. We affirm.

---

1. Hollifield contends that the trial court erred in granting partial summary judgment in granting a writ of ejectment against him.

(a) Hollifield contends that the plaintiffs knew of his improvements, that the improvements were on their land, and that they made no protest until the improvements were completed; therefore, the plaintiffs are now estopped from obtaining a writ of ejectment.

Hollifield admitted that he knew who the owners of the land were and had offered to purchase some of the land from Frost, but there was never an agreed-on purchase price. Further, he knew that there was only a possibility or chance that Frost would sell to him. But nonetheless, during 1994 and 1996, he proceeded to build on land that he knew that he did not own. He admitted that he erected a brick and iron-work fence, paved a driveway, and began an addition to the structure on his lot, knowing that it encroached on plaintiffs' lands, because he planned to buy the adjoining land from the plaintiffs. He also admitted paving over a path without permission of the owner, although he did not need it for ingress or egress, and he admits telling the owner on complaint that he would remove the driveway but has never done so. Defendant admits that he intended to build and did build within five feet of his property line in violation of the Fulton County Building Code and that he did not have the land surveyed or know where his property line was located. He admits that, upon notice of encroachment in building the structure, he immediately stopped construction of the block building. He admitted that, if the plaintiffs' survey is correct, he has encroached on plaintiffs' land.

On June 18, 1999, within five years of the encroachment, plaintiffs sued Hollifield for writ of ejectment from their land. Hollifield has admitted the grounds for the issuance of a writ of ejectment and denial of an estoppel defense. "Conclusive presumptions of law are termed estoppels; averments to the contrary of such presumptions shall not be allowed. Estoppels are not generally favored. . . . Estoppels also include all similar cases where it would be more unjust and productive of evil to hear the truth than to forbear investigation." OCGA § 24-4-24.

Under the facts and circumstances of this case, defendant's reliance upon *Ga. R. &c. Co. v. Hamilton*, 59 Ga. 171, 175 (1877) is misplaced, because that opinion held, "[w]e hardly think that the doctrine extends so far as to estop the company from recovering the land; but it certainly does estop the company from recovering defendant's house, if he acted in good faith in building where he did; and it is certainly difficult to see how he could have well acted in bad faith." There, the railroad had to either allow the builder/owner to remove his house from the railroad right-of-way or pay for the damage to it from removing that portion on the right-of-way as a matter of equity;

however, the railroad recovered its land. The Supreme Court applied equitable principles in resolving the case, because, unlike in this case, the builder acted in good faith and in ignorance.

In this case, Hollifield acted with knowledge that he was building on others' land without permission or reckless disregard of the truth; he put himself in this position with unclean hands with recklessness and knew that he was violating the county building code in building too close to his property line. Hollifield failed to determine his and his neighbors' property line by survey prior to acting and continued his knowing trespass until told to stop. Such conduct constitutes bad faith.

The party asserting the benefit of estoppel must have acted in good faith and in the exercise of reasonable diligence. See OCGA §§ 24-4-25; 24-4-27; *Travelodge Corp. v. Carwen Realty Co.*, 223 Ga. 821, 823-824 (1) (158 SE2d 378) (1967); *Tybrisa Co. v. Tybeeland, Inc.*, 220 Ga. 442, 445-446 (139 SE2d 302) (1964); *Whitco Produce Co. v. Bonanza Intl.*, 154 Ga. App. 92 (267 SE2d 627) (1980). Thus, when an adjacent property owner fails to exercise reasonable diligence by knowingly building on the land of another that he hoped to purchase, he cannot avail himself of the defense of estoppel. *Travelodge Corp. v. Carwen Realty Co.*, supra at 824 (1).

"In cases of silence there must be not only the *right* but the *duty* to speak before failure to do so can operate as an estoppel. [Cit.]" (Emphasis in original.) *Tybrisa Co. v. Tybeeland, Inc.*, supra at 445.

> Something more than mere passivity or inaction while the expense is being incurred is generally necessary to create an estoppel. In cases of silence there must be not only the right but the duty to speak, before a failure to do so can estop the owner. Where the owner merely stands by and fails to object while improvements are being constructed, he is not estopped from obtaining relief in equity against the diversion of the water, where the expenditure is made with notice, actual and constructive, of his superior rights. The defendants show no right to divert the waters of this creek from lower riparian owners. They were bound to know that it was unlawful for them so to do. They were chargeable by law with notice of the superior rights of lower riparian owners of land on this stream. They knew that the diversion of a substantial portion of the water of this stream from the land of the plaintiff was unlawful and a trespass. These facts were well known to the defendants as to the plaintiff. Where the facts are known to both parties, and where they have the same means of ascertaining the truth, there is no estoppel.

(Citations omitted.) *McNabb v. Houser*, 171 Ga. 744, 752 (156 SE

595) (1931). One who has title in whole or in common to land and who sees another, in lawful possession, place valuable improvements on the land but does not give notice of his title to the builder is not subsequently estopped from asserting title. *Owen v. Miller*, 209 Ga. 875, 876 (1) (76 SE2d 772) (1953).

> [A]n estoppel can not be the basis of title to land, an equitable estoppel is based on the ground of promoting the equity and justice of the individual case by preventing a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth.

(Citations and punctuation omitted.) *Davis v. Auerbach*, 78 Ga. App. 575, 579 (3) (51 SE2d 527) (1949); see also *Yaali, Ltd. v. Barnes & Noble, Inc.*, 269 Ga. 695, 696-697 (2) (506 SE2d 116) (1998). "The recognition of such a property right [easement] now based solely on estoppel exceeds the reach of estoppel by deed, whether considered as an evidentiary rule or a substantive principle of property law." *Yaali, Ltd. v. Barnes & Noble, Inc.*, supra at 697.

When a party comes into court with unclean hands, equity will not grant relief to such party. See *Head v. Walker*, 243 Ga. 108, 110 (252 SE2d 440) (1979); *Fuller v. Fuller*, 211 Ga. 201, 202 (84 SE2d 665) (1954). Here, Hollifield not only intentionally trespassed on his neighbors' land, but he also intended to violate the Fulton County Building Code by building within the mandated side yard, which ordinance acted in part to prevent such encroachments.

(b) Hollifield contends that the plaintiffs "waived any rights which they had to the property which appellant constructed upon." None of the cases relied upon by defendant regarding waiver involve "waive[r of] any rights which [an owner] had to property," but instead involve the waiver of procedural rights or claims other than property rights. Therefore, factually and legally such cases are distinguished from this action for ejectment to protect title to land.

Between 1994 and 1996, the owners demanded that the driveway be removed from their property, and Hollifield indicated that he would remove it. In 1999, after he received notice that he was building on the plaintiffs' land, he stopped construction. Thus, the plaintiffs timely protested encroachments by the defendant prior to suit.

Defendant contends that the plaintiffs lost title to their land by waiver. Other than by eminent domain, prescriptive title is the only way title to land may be lost by the action or inaction of the legal or equitable owner to another asserting rights in the land adverse to the owner. Adverse possession requires that the possession of the

land be open and adverse possession continuously for 20 years by the claimant and his privies. OCGA §§ 44-5-160; 44-5-161; 44-5-163; *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762-765 (1) (482 SE2d 362) (1997). Thus, the adverse possession must be continuous, exclusive, uninterrupted, public, and peaceful for 20 years for a prescriptive title to be acquired by another. *Ga. Power Co. v. Irvin*, supra at 760. Even adverse possession under color of title requires seven years adverse possession. OCGA § 44-5-164; *Spillers v. Jordan*, 96 Ga. App. 426, 432-434 (3) (100 SE2d 483) (1957). Plaintiffs brought their action for ejectment well within the seven-year statute of limitation to protect their title and possession of their land from a continuing trespass by Hollifield. See generally *Brown v. Brown*, 208 Ga. 404 (67 SE2d 128) (1951); *Shirley v. Mulligan*, 202 Ga. 746, 748-749 (2) (44 SE2d 796) (1947). Thus, plaintiffs did not lose title to their land.

2. Hollifield contends that the trial court erred in granting summary judgment on his counterclaim for the recovery of the reasonable value of improvements to the plaintiffs' land made by him.

Hollifield undertook to clean up and beautify the plaintiffs' land to benefit his own land and for future purchase by him. "I was just cleaning it up because it was an eyesore and I wanted my side to look good as well as his side." "I wanted to make a change for the entire community as well as myself." Hollifield began his planting of trees, shrubs, and flowers on Frost's land as early as 1989 and continued it into 1998. Although Frost wanted too much to sell the land, Hollifield claimed to have put $50,000 worth of flowers, trees, and shrubs on the land after his failure to purchase the property, because

> it was one of the most ugly pieces of property in the state of Georgia, number one. It was an eyesore to the entire community and it didn't represent me because what I was living next door to I just didn't want that next door to me. That was my number one reason to clean it up, to make it look decent because wouldn't nobody come to see me with that over there, water, trees and everything all in the place. It was a mess.

From Hollifield's own admissions, he was a mere volunteer, seeking no monetary compensation for his services and improvements. His contribution of labor, trees, shrubbery, and flowers constituted gratuitous acts.

(a) Under the theory of liability for quantum meruit the essential elements are: (1) the provider performed as agent services valuable to the recipient; (2) either at the request of the recipient or knowingly accepted by the recipient; (3) the recipient's receipt of which without compensating the provider would be unjust; and (4) provider's expec-

tation of compensation at the time of rendition of services. OCGA § 9-2-7; *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga. App. 772, 777 (5) (399 SE2d 529) (1990); see also *Allen v. T. A. Communications*, 181 Ga. App. 726, 727 (353 SE2d 569) (1987).

Quantum meruit does not apply where the services are rendered with no expectation of compensation being recovered by a volunteer. *Pembroke Steel Co. v. Technical Sales Assoc.*, 138 Ga. App. 744, 745 (2) (227 SE2d 491) (1976); *Creative Svc. v. Spears Constr. Co.*, 130 Ga. App. 145 (3) (202 SE2d 581) (1973); *Addison v. Southern R. Co.*, 108 Ga. App. 314, 315-316 (132 SE2d 833) (1963). "Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." OCGA § 9-2-7. However, when the person renders services or contributes property as a gratuity as a volunteer, quantum meruit is not recoverable, because neither party had an expectation that anything would be paid. *Creative Svc. v. Spears Constr. Co.*, supra at 145; *Addison v. Southern R. Co.*, supra at 316; *Guyton v. Young*, 84 Ga. App. 155, 162 (5) (65 SE2d 858) (1951).

Although one performs services with the expectation of compensation from a corporation, such services were not rendered with the expectation of compensation from its successor corporation; thus, quantum meruit would not lie against the successor corporation, because the provider could not possibly have had an expectation of compensation from it. Summary judgment was appropriate. *Artrac Corp. v. Austin Kelley Advertising*, supra at 777 (5).

The legal presumption that the person receiving the benefit of services is bound to pay for them is subject to rebuttal by proof either (a) that the services were rendered with the gratuitous intent by the provider, or (b) that, by the particular circumstances, which in law would raise the counterpresumption that the services were not intended to be a charge against the party benefitted. *Smith Dev. v. Flood*, 198 Ga. App. 817, 819-821 (3) (403 SE2d 249) (1991); see also *Cooper v. Cooper*, 59 Ga. App. 832-833 (1) (2 SE2d 145) (1939); *Guyton v. Young*, supra at 162.

In this case, Hollifield provided the services and plantings to benefit himself either by ultimately buying the land that he improved or by improving the appearance of the general area where he lived. Further, until the ejectment suit, he never sought compensation in approximately ten years. Thus, he failed to show that he had an expectation of compensation at the time the services and plantings were made.

(b) Even if Hollifield rendered services with an expectation of compensation, the services must be of value to the recipient for an implied promise to pay to arise. If the services or things furnished have no value to the recipient, but have value to the provider, then

no duty to pay for unwanted and nonbeneficial services arises, because the provider cannot impose his unwanted services on another. *Stowers v. Hall*, 159 Ga. App. 501, 502 (3) (283 SE2d 714) (1981); *Pembroke Steel Co. v. Technical Sales Assoc.*, supra. The reasonable value which the provider is entitled to recover in quantum meruit is not the value of the labor but the value of the benefit resulting from such labor to the recipient; if there is no benefit to the recipient, then there is no recovery for something of no value to the recipient. *Griner v. Foskey*, 158 Ga. App. 769, 771 (2) (282 SE2d 150) (1981); *City of Gainesville v. Edwards*, 112 Ga. App. 672, 675 (145 SE2d 715) (1965). Where the recipient neither authorizes, consents to, nor ratifies another's labors or permanent improvements of property which were rendered without the knowledge of the recipient, no duty to pay can be imposed on the recipient as an alleged beneficiary; where the unwanted goods and services cannot be returned by the unknowing and unconsenting beneficiary, it would be unduly harsh to require payment for what was unknowingly conferred. *Beavers v. Weatherly*, 250 Ga. 546, 548 (299 SE2d 730) (1983); see also *Grady Tractor Co. v. First Nat. Bank &c.*, 213 Ga. App. 663, 664 (1) (446 SE2d 228) (1994). If damages for the benefit conferred were recoverable, then the measure of damages would be the reasonable value of labor and materials of benefit to the recipient or the amount which the improvements added to the fair market value of the land, whichever is the smaller. *Beavers v. Weatherly*, supra at 548. Hollifield failed to prove the benefit to the plaintiffs. Defendant gave his opinion as to the value of his services, which fails to prove the value of the benefit, if any, to the plaintiffs. Had the defendant proved the value of plaintiffs' land both before and after his services, the increase in value would be some circumstantial evidence of the conferred benefit to the plaintiffs creating a jury question, because some of the increase in value would be attributable to inflation and to increase in the market.

(c) Also, Hollifield contends that under the doctrine of unjust enrichment the plaintiffs should be compelled to pay for the benefits that he conferred upon the plaintiffs. "The theory of recovery for unjust enrichment arises both at law and equity. [Cits.]" *Reidling v. Holcomb*, 225 Ga. App. 229, 231 (2) (483 SE2d 624) (1997).

The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay. *Zampatti v. Tradebank Intl. Franchising Corp.*, 235 Ga. App. 333, 340 (5) (508 SE2d 750) (1998); *Smith v. Huckeba*, 232 Ga. App. 374, 376 (2) (501 SE2d 877) (1998); *Regional Pacesetters v. Halpern Enterprises*, 165 Ga. App. 777, 782 (2) (300 SE2d 180) (1983).

"The measure of damages under quantum meruit or unjust

enrichment is based upon the benefit conferred upon the [recipient] and not the cost to render the service or cost of the goods." (Citations omitted.) *Zampatti v. Trademark Intl.*, supra at 340. "The only evidence offered to establish [defendant's] claim was [his] testimony concerning the cost of [planting and labor]. It was not established that the [planting and labor] enhanced the value of the property in any manner and thus conferred a benefit on the [plaintiffs]." *Engram v. Engram*, 265 Ga. 804, 807 (2) (463 SE2d 12) (1995). Just as in Division 2 (b), supra, where Hollifield failed to establish the benefit conferred upon the plaintiffs, he also has here failed to come forward with some evidence.

Where a party under no legal or moral obligation to pay a debt of another pays such debt without request, instance, or consent of the debtor and the debtor does not ratify the act, such payment cannot be recovered from the debtor because this was a voluntary payment, not an unjust enrichment. *Benton v. Gaudry*, 230 Ga. App. 373, 376 (3) (496 SE2d 507) (1998); cf. *Woodard v. First Nat. Bank &c.*, 159 Ga. App. 769, 771-772 (285 SE2d 229) (1981); *Clay v. Littlefield*, 144 Ga. App. 88, 91 (1) (240 SE2d 254) (1977). Further, the acts of a volunteer in paying a debt for which there is no legal or moral obligation to pay without the request or consent of the debtor does not give rise to any liability. *Jennings v. Stewart*, 106 Ga. App. 689, 690 (2) (127 SE2d 842) (1962).

For unjust enrichment to apply either in law or equity, the party conferring the labor and things of value must act with the expectation that the other will be responsible for the cost. *Engram v. Engram*, supra at 807. Here, Hollifield acted without such expectation.

"The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." *Reidling v. Holcomb*, supra at 232 (2). Inherent in the theory of unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon him by another and failed to stop the act or to reject the benefit prior to its conferment. Id. at 231-232 (2); see also *Beavers v. Weatherly*, supra at 548 (2).

Absent evidence that the services and alleged improvements enhanced or increased the fair market value of the property of the beneficiary, no unjust enrichment has been shown. Thus, when a tenant makes improvements under the belief that they have an option to purchase, absent evidence of the cost of construction, there is no showing of enhanced value or conferred benefit on the owner for equitable compensation to arise. *Engram v. Engram*, supra.

Since unjust enrichment is primarily an equitable doctrine, then

where it would be unjust to require full restitution, there is no duty to make full restitution. *Dept. of Med. Assistance v. Presbyterian Home*, 200 Ga. App. 885 (409 SE2d 881) (1991). "If this action were exclusively in equity, then [Hollifield's] acts . . . would bar any relief under the maxims of equity. [Cit.]" *Reidling v. Holcomb*, supra at 231 (2).

In this case, Hollifield acted in bad faith and reckless abandon without expectation of compensation; he has unclean hands. Further, he failed to produce any evidence that his services and plantings had a value or benefit to the plaintiffs, no matter what value he placed on the services.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED AUGUST 8, 2001.

*Pierce & Young, J. Wayne Pierce*, for appellant.
*King & Croft, F. Carlton King, Jr.*, for appellees.