A90A0991. ADVANCE SECURITY, INC. v. SUPERIOR SURGICAL MANUFACTURING COMPANY, INC.
(399 SE2d 488)

COOPER, Judge.

Appellee, a company in the business of selling uniforms, entered into a business relationship with appellant, a security guard firm. The agreement reached by the parties is contained within the contents of a series of letters sent between appellee and appellant. In the first letter, dated March 16, 1983, appellee sent a price list for uniforms to appellant and suggested that appellee maintain an inventory of uniforms at appellee's warehouse, the level of the inventory to be set forth in a mutually agreeable contract. A letter dated April 28, 1983, from appellee to appellant included a list of proposed inventory levels and provided:

"Enclosed please find various inventory levels that I propose we carry for Advance Security. We will only carry these levels with your written permission. *It is understood that the inventory levels that you authorize are Advance Security's responsibility and any other inventory that Martin's Service Uniforms decides to carry on Advance Security's behalf is the responsibility of Martin' Service Uniforms.*

If at any time Advance Security decides to place its uniform business elsewhere then Advance Security will be required to call in and/or pay for the remaining inventory on hand at that time within a 150 day time period. Advance Security has the right to increase or decrease the attached inventory levels at their own discretion. Marilyn, if you feel that these levels are either too high or too low we will be happy to adhere to whatever you think is in the best interest of Advance." (Emphasis supplied.)

Appellant responded to this letter on June 6, 1983 as follows:

"This letter is to confirm our agreement concerning inventory levels as per your letter of April 28.

*We understand this inventory (copy attached) is our responsibility in the event we should terminate Martin's Service Uniforms as our supplier.*" (Emphasis supplied.)

Appellee did approximately $50,000 worth of business with appellant for the six months remaining in 1983 and in 1984, appellant's business with appellee increased to over $250,000. Because of the increase in business, appellant required more uniforms, and in a letter dated April 9, 1984, appellee notified appellant as follows:

"As per our conversation, we are increasing your inventory levels that we carry for Advance Security. As in our earlier agreement it is understood that the inventory levels that you authorize are Advance Security's responsibility and any other inventory that Martin's Service Uniforms decides to carry on Advance's behalf is the sole responsibility of Martin's Service Uniforms. All other agreements and understandings as per our letter of April 28, 1983 will remain the same."

Appellant did not respond to this letter, and appellee proceeded to increase the inventory levels according to the new inventory levels which were attached to the letter. In 1986, appellant's business with appellee decreased significantly. Appellee considered the agreement terminated and sent appellant an invoice for the amount of the inventory carried by appellee for appellant. When appellant did not pay the invoice, appellee brought suit against appellant for the balance due on the account. During the trial, appellant moved for a directed verdict which was denied by the trial court. The jury returned a verdict in favor of appellee for $59,928.68, which represented the amount of the inventory remaining in appellee's warehouse pursuant to the

levels set in the April 9, 1984 letter. The trial court subsequently denied appellant's motions for judgment notwithstanding the verdict and new trial and this appeal followed.

1. In its first two enumerations of error, appellant alleges error in the trial court's denial of its motion for directed verdict. Appellant first argues that the contract was too vague and indefinite to be enforceable. "The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon. [Cit.]" *Farmer v. Argenta*, 174 Ga. App. 682, 683 (331 SE2d 60) (1985). Specifically, appellant contends that the agreement is too vague and indefinite because it does not mention the quantity of goods to be purchased, the price of the goods, the terms of credit or when and where the goods were to be delivered. We find that the April 28 letter and the June 6 letter, when read together, sufficiently express the agreement between appellant and appellee. Appellant agreed to utilize appellee as a supplier of uniforms, and appellee agreed to maintain certain inventory levels provided that if appellant terminated the agreement, appellant would purchase the uniforms remaining in inventory. The record reflects that a price list was sent to appellant with the March 16 letter. At the time the contract was terminated, the "quantity" of uniforms appellant was obligated to purchase equalled the number of uniforms in inventory, previously authorized by appellant, and those uniforms were to be paid for in full within 150 days after appellant was invoiced for the uniforms. " 'A contract will not be held unenforceable for indefiniteness because its performance is, as to particular details, left open to subsequent agreement of the parties.' [Cit.]" *Knoxville Med. Investors v. Nat. Healthcorp*, 192 Ga. App. 460 (3) (385 SE2d 110) (1989). We do not find that the agreement was so vague and indefinite as to make it unenforceable.

Appellant also contends that the agreement was unenforceable because it was unilateral and lacking in mutuality. While appellant was not required to make any specific purchases, appellant was responsible for the inventory maintained by appellee at appellant's request, and appellee was required to ensure the specified amount of inventory was available for appellant's purchase. We find that "the mutual promises and obligations of the parties constituted sufficient consideration for the contract. [Cits.]" *Atlanta Six Flags Partnership v. Hughes*, 191 Ga. App. 404 (1) (381 SE2d 605) (1989). Accordingly, we find no error with the trial court's denial of appellant's motion for directed verdict.

2. In its third and fourth enumerations of error, appellant contends that the trial court erred in failing to charge the jury (1) that where there is no agreement and specific detail as to the quantity of goods to be purchased, the terms of the purchases, or when or where

the goods are to be delivered, then such a contract is too indefinite to be capable of enforcement and (2) that where the purported agreement gives the buyer the right to determine how and when it may purchase from the seller and where the buyer has on occasions purchased from sources other than the seller and if the purported contract is unilateral, then the contract is unenforceable. The trial court charged the jury that "a promise to be enforceable must be sufficiently definite as to subject matter." "A requested charge is properly refused when 'the principle involved (is) substantially covered in the court's general charge, the requested language (is) not adjusted to the evidence, or the requested language (is) argumentative.' [Cit.]" *Shaw v. McDonald's Restaurants*, 191 Ga. App. 583 (2) (382 SE2d 632) (1989). The charges requested by appellant were argumentative and not adjusted to the facts of the case; therefore, it was not error for the trial court to refuse to give the charges.

3. Since appellant's motion for judgment notwithstanding the verdict and motion for new trial were based on the same grounds previously discussed in his opinion, the trial court likewise did not err in denying the motions. See *Wedgewood Carpet Mills v. Color Set*, 149 Ga. App. 417 (4) (254 SE2d 421) (1979).

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED OCTOBER 19, 1990 —
REHEARING DENIED NOVEMBER 29, 1990 —

*Long, Weinberg, Ansley & Wheeler, Dan B. Wingate, Yvette M. Chapman*, for appellant.

*Fierman & Noland, Martin L. Fierman*, for appellee.