## A07A1842. DEPARTMENT OF TRANSPORTATION v. PATTEN SEED COMPANY.
### (660 SE2d 30)

ELLINGTON, Judge.

A Peach County jury returned a verdict in favor of Patten Seed Company for the value of condemned land taken from the company by the Georgia Department of Transportation ("DOT") for highway expansion, and the court entered a final judgment in the amount of $996,430.01.[1] The DOT appeals from the final judgment, contending the court erred in admitting speculative valuation testimony, in excluding rebuttal testimony, and in charging the jury. Finding no error, we affirm.

1. The DOT contends the court erred in allowing Patten Seed's witnesses to give speculative valuation testimony on the potential commercial uses of the property condemned. Specifically, the DOT contends the court erred in allowing testimony showing that the property had a higher value based on evidence that commercial use was feasible given the possibility of a change in zoning, the possibility of a grant of a setback line variance, and the possibility of connecting the property to public water and sewer services. With respect to the admission of such valuation testimony, we have held:

> In all cases, the only question for decision is the value of property taken (or consequential damages) at the time of taking. The fact that the property is merely adaptable to a different use is not in itself a sufficient showing in law to consider such different use as a basis for compensation; it must be shown that such use of the property is so reasonably probable as to have an effect on the present value of the land. Even where a different use is shown to be reasonably probable, the jury cannot evaluate the property as though the new use were an accomplished fact; the jury can consider the new use only to the extent that it affects the market value on the date of taking. Condemnees' expert could give his opinion of the value of the land on the date of taking based upon its enhanced value because of its adaptability as a commercial property; he could not testify as to the value before and

---

[1] The judgment included $699,000 for the land condemned, $49,800 for the cost to move a well, and $247,630.01 in prejudgment interest.

after the taking based upon his assumption of the value as if the property had already been commercially developed, but where he gives reasons which appear to be wholly speculative or conjectural, his opinion is without foundation and without probative value.

(Citation and punctuation omitted.) *Ga. Transmission Corp. v. Barron*, 255 Ga. App. 645, 647 (566 SE2d 363) (2002).

The record reveals that on January 22, 2001, the DOT condemned 15.172 acres of Patten Seed Company's 280-acre sod farm located in the southeastern quadrant of the intersection of Interstate 75 and Georgia Highway 96 in Peach County. The property condemned included a level strip of land 125 feet deep with 3,400 feet of frontage on Highway 96. Patten Seed's owner testified that the company bought the property as an investment, anticipating commercial growth, and that he had been contacted frequently by brokers and developers interested in listing or purchasing the property. Patten Seed's valuation experts testified that the highest and best use for most of the property (the 11.6 acres comprising the strip with frontage) was as a commercial property, and based on a review of comparable parcels, opined that the value of that property at the time of the taking was approximately $45,000 to $48,848 per acre.

Although the property was zoned for agricultural use at the time of taking, it was located beside or across from properties at the interchange that were zoned commercial. Patten Seed presented testimony from the Peach County zoning administrator that it was "highly likely" that the property would have been rezoned commercial at the time of taking given its location and proximity to other commercial uses had a petition been filed. Further, it would have been "reasonable" to grant a variance from the required setbacks since the only other property owner abutting the strip was Patten Seed, which would not have objected. And although the property was not served by water and sewer, which would be necessary for commercial development, Patten Seed presented the testimony of the mayor and the county attorney of Warner Robins, both of whom explained that the city legally could have and "absolutely" would have extended services to the property if requested. In fact, the city had extended water and sewer to many other comparable properties, and had never declined the extension of services before. The mayor explained that the public cost to extend services the two miles to the property would have been less than $150,000, and construction could have been completed in three months. The mayor testified that Warner Robins was the fastest growing city in Georgia, that much of that growth was along Highway 96, and that the city had been

"aggressive[ly]" extending services, having added an average of 1,805 water-sewer taps per year in the preceding six years.

Given that the property reasonably could be adapted to commercial uses, Patten Seed's valuation experts considered sales of comparable commercial properties that occurred close to the time of taking, including ones that had recently been farm land. In evaluating the comparables, the experts took into account several factors, such as location, traffic counts, highway frontage, and developments costs and risks, and they discounted the value of some of the comparable sales accordingly. Further, although the narrow shape of the property was not ideal for development, the experts evaluated properties with similarly narrow shapes and discussed the commercial uses to which those properties had been put. Taking into account the location and topography of the property condemned, the absence of utilities, and the zoning uncertainties, Patten Seed's experts opined that the highest and best use of the land was commercial and valued the property from $524,700 to $820,000.

Given the record evidence, we cannot say that the experts' valuation testimony was wholly speculative. Patten Seed adduced evidence from which a jury might infer that a commercial use of the property was reasonably probable and therefore likely affected its value. See *Ga. Transmission Corp. v. Barron*, 255 Ga. App. at 647. Moreover, the experts discounted their valuations to account for the fact that the commercial use had not been accomplished. Thus, this testimony was relevant and admissible, and the trial court did not abuse its discretion in admitting it. See, e.g., *Unified Govt. of Athens-Clarke County v. Watson*, 255 Ga. App. 1, 2-3 (1) (564 SE2d 453) (2002) (where planning director testified that rezoning was possible and evidence was adduced that property was suitable for such use, the court did not abuse its discretion in allowing the jury to consider evidence of possible rezoning as affecting the market value of the property); *Ga. Power Co. v. Cole*, 141 Ga. App. 806, 807 (1) (234 SE2d 382) (1977) (evidence that condemnee's land could be developed for a mobile home park, that demand for such land and developments existed, and that the condemnee's land was particularly well suited for such development, authorized the factfinder to conclude that the land could be used as a mobile home park and, therefore, was relevant to the determination of its value).

2. The DOT contends the trial court erred in refusing to give the jury a *"Gunnels* charge," a jury instruction explaining the five-step process for determining the total damages in a condemnation action when a piece of property is taken from a larger tract of land and the total damages includes consequential damages for the diminution in value to the remaining tract. As we have explained,

[t]here are two elements of just and adequate compensation for a partial taking of property by condemnation: (1) the market value of the portion actually taken; and (2) the consequential damage, if any, to the remainder. In order to determine the total damages, a jury is required to follow a five-step procedure: (1) determine the fair market value of the entire tract of property before any part is taken; (2) the value of the partial portion taken considered as a part of the whole tract; (3) the value of the remaining tract but just before the taking; i.e., the value of the remainder as a part of the whole by subtracting the value of a part taken from the value of the entire property; (4) the market value of the remainder just after the taking, considering the negative impact of the separation of the part from the whole; and (5) the positive impact of the taking of the part upon the value of the remainder just after the taking.

(Citation and punctuation omitted.) *Dept. of Transp. v. Ogburn Hardware & Supply*, 273 Ga. App. 124, 125-126 (1) (614 SE2d 108) (2005), citing *Dept. of Transp. v. Gunnels*, 175 Ga. App. 632 (334 SE2d 197) (1985), rev'd on other grounds, 255 Ga. 495 (340 SE2d 12) (1986).

Although the DOT's written Request to Charge No. 7A tracked this language, the court properly refused to give it because it was not adjusted to the evidence. This charge guides the jury in calculating total damages when there are consequential or inverse condemnation damages to the tract of land remaining to the condemnee after the taking. It is not, as the DOT argues, a charge simply telling the jury "that they cannot consider the take, the part acquired, in a vacuum. It's got to be considered as part of the overall parent tract." As the DOT's own experts testified, there were no consequential damages issues to be resolved by the jury. These experts testified that the value of the remaining tract, the Patten Seed sod farm, was not diminished by the taking, and that, in their opinion, there were no consequential damages at issue. The DOT's counsel agreed during the trial conference that the only issue before the jury was the value of the property condemned, and that the only element of consequential damages — the cost to relocate a well — had been the subject of a directed verdict and thus was not before the jury.

Under the circumstances, giving the DOT's Request to Charge 7A would likely confuse the jury because the charge covered matters that were neither in issue nor supported by the evidence. As we have held, "[i]f *any portion* of a requested charge is inapt, incorrect, misleading, confusing, argumentative, not precisely adjusted or tailored, or not reasonably raised or authorized by the evidence, denial

of the charge request is proper." (Citations omitted; emphasis in original.) *Morris v. State Farm &c. Ins. Co.*, 203 Ga. App. 839 (1) (418 SE2d 119) (1992).

3. The DOT contends the court erred in giving Patten Seed's Request to Charge No. 12, which provided:

> When assessing the value of the land taken as part of the entire tract, it is not proper merely to compute the percentage value on the basis of an artificial unit value for the entire tract unless the actualities of the case accord with such approach, as the value taken is not dependent upon the size of the whole; that is, the value of the part taken is not automatically measured by the size of the parcel from which it's taken, although the value of the part taken may be derived in part by the nature of the land around it because the setting affects the highest and best use of the property taken.

This charge is a correct statement of the law. As we have explained:

> The value of the part taken is not automatically measured by the size of the parcel from which it is taken, although the value of the part taken may be derived in part by the nature of the land around it because the setting affects the highest and best use of the taken property. . . . In assessing the value of the land taken as part of the entire tract, it is not proper merely to compute the percentage value on the basis of an artificial unit value for the entire tract, unless the actualities of the case accord with such an approach. It may be that the part taken is the most valuable part of the tract, considered from a qualitative point of view. To attribute an average unit value thereto which is based in part on the lower value of the balance of the tract is inequitable to the owner in a double aspect. It attributes a value to the part taken which is lower than its actual value, and it attributes a higher ultimate value to the remainder area than its actual value, thereby reducing his recovery as to both factors below his actual damages.

(Citation, punctuation and emphasis omitted.) *Bland v. Bulloch County*, 205 Ga. App. 317, 319-320 (422 SE2d 223) (1992). See also *Loggins v. Dept. of Transp.*, 264 Ga. App. 514, 515 (591 SE2d 365) (2003) (just compensation for a portion of a tract of land cannot be based solely on its relationship to the entire parcel, because the value of the part taken is not dependent on the size of the whole, unless the

actualities of the case accord with such an approach); *Chastain v. Fayette County*, 221 Ga. App. 118, 119 (1) (470 SE2d 513) (1996) (in assessing the value of land taken from a larger tract, it is not proper merely to compute the percentage value on the basis of an artificial unit value for the entire tract, unless the actualities of the case accord with such an approach).

The court was authorized to give this charge because it was legally correct and some evidence authorized it. See *Holt v. Scott*, 226 Ga. App. 812, 815 (2) (487 SE2d 657) (1997) ("[A]n instruction is not inapplicable where there is any evidence, however slight, on which to predicate it. It is not even necessary there should be direct evidence going to that point, it is enough if there be something from which a legitimate process of reasoning can be carried on in respect to it.") (citations and punctuation omitted). The record reveals a DOT expert witness appraised the property as follows: "I appraised the big tract, and then I appraised the small one as part of the big tract." He opined that both parcels had the same highest and best use, and he valued the property taken at the same unit price that he did the parent tract, at $6,000 per acre. Given this evidence, we cannot say that the trial court erred in giving the requested charge.

4. The DOT contends the court erred in disallowing rebuttal testimony on the issue of what it would cost a developer to extend water service to the property using private funds. Following a question posed on cross-examination by counsel for the DOT, one of Patten Seed's experts opined that it would cost a developer about $85,000 to extend water service to the property. The DOT argued that it should be allowed to show that a developer would be required to spend almost $397,500 to extend water service. The trial court reasoned that because the DOT's expert had not previously given an opinion on that issue in his deposition or in his interrogatories, and because Patten Seed had chosen to rely on the probability that water and sewer would be provided to the site with public funds, the proper way to solve the problem would be to tell the jury to disregard the witness's testimony, and the court did so. Because the court instructed the jury to disregard the testimony at issue, there was nothing to rebut. *Bowman v. Bowman*, 230 Ga. 395, 396 (1) (197 SE2d 372) (1973) ("An instruction to the jury to disregard evidence is tantamount to an exclusion.") (citation omitted). Under the circumstances, we cannot say the trial court abused its discretion in disallowing the rebuttal testimony. See *Hutto v. Shedd*, 181 Ga. App. 654, 656 (1) (353 SE2d 596) (1987) (admissibility of rebuttal evidence lies within the sound discretion of the trial court). We find no error.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED MARCH 14, 2008 —
RECONSIDERATION DENIED MARCH 26, 2008 —

*Thurbert E. Baker, Attorney General, Harris & James, William C. Harris*, for appellant.

*Baker, Donelson, Bearman, Caldwell & Berkowitz, Charles L. Ruffin, Carl R. Varnedoe*, for appellee.