**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

July 11, 2012

# In the Court of Appeals of Georgia

A12A0620. CITY OF BALDWIN v. WOODARD & CURRAN, INC.

ANDREWS, Judge.

The City of Baldwin, Georgia (City) appeals after a jury awarded Woodard & Curran, Inc. (W&C) $203,000 on its claim for money owed under a contract to provide services for the City's wastewater treatment plant. Because there was sufficient evidence to support the award, we affirm.

The record shows that W&C sued for breach of a contract under which it was to be paid for engineering and design services for the City's water system (May contract). W&C claimed that it provided supporting engineering documents for the City's application for government stimulus funds to improve the City's wastewater treatment plant under the May contract and also under a proposal submitted on June

15, 2009 (June proposal). The June proposal was signed by the mayor under "authorization to proceed," and provided that W&C would be paid a sum "not to exceed $210,000.00." In the alternative, the complaint asked for damages of $203,870.44 as the value of the services provided to the City.

The City's position was that it paid the $5,000 owed under the May contract and that was the total amount due. The City stated in its Answer that the mayor's signing of the June proposal was an *ultra vires* act and was not binding on the City because it was not approved by a quorum of the city council. The City also stated that the June 2009 proposal was to secure funding and C&W failed to secure the funding; therefore, the City was unable to proceed with the project.

The case went to trial and the evidence at trial, viewed in the light most favorable to the jury's verdict,[1] was that W&C began operating the City's wastewater treatment plant in January 2008. In conjunction with an application for funding to help improve the plant, W&C agreed to "provide the supporting engineering documents . . . in order to convert this project from 'fundable' to 'funded' for a Lump Sum fee of $5,000. . . . Under separate covers we will be preparing a scope, budget and schedule for the actual design work for the Headwords (sic) and associated

---

[1] *Ferman v. Bailey*, 292 Ga. App. 288, 289 (664 SE2d 285) (2008).

2

improvements (including the Design Development Report for the overall plant) and also will submit a grant application to Rural Development to fund the development of a capital master plan for the water and wastewater systems. Additional engineering fees will only be contracted once funding has been committed."

Brent Bridges, a senior vice-president with W&C testified that the $5,000, as stated in the proposal, was to be paid for the documents to support the funding application for stimulus money. The second part of the proposal agreed to in the May 2009 contract, was not covered by the $5,000 and involved supplying the design engineering necessary to apply for funding.

The senior project manager at W&C testified that pursuant to the second part of the May contract, there was a meeting with the Mayor and two city council members and they authorized the second project of the May contract and authorized payment of $210,000 for that work.

At this meeting with the mayor and council members, W&C was told to proceed with the work necessary to continue the application process. This work included hiring surveyors, hiring geo-technical core drillers, getting bids for the work, and completing the design plans.

3

After the mayor signed the authorization to proceed, and as the work progressed, the project engineer was asked to attend a city council meeting and update the mayor and city council on the work that W&C was doing. The engineer stated that he attended the meeting and described the work that was being done and the status of the permits, applications, designs, specifications and reports. He testified that the City owed W&C approximately $203,000 for this work.

The mayor who signed the June proposal testified that it was his understanding that the full amount contracted for was the $5,000 and any additional engineering fees would be contracted for once the funding was committed. The mayor said that he signed the proposal for the additional work but did not date it because he could not obligate the City by himself and it would have to be voted on by the council and reviewed by the city attorney.

The mayor testified as to the benefit to the City if improvements were made to the wastewater treatment plant, stating that improvements to the headworks would have averted the possibility of substantial fines from the EPD. The mayor acknowledged that he knew W&C was doing engineering work for the City in order to obtain the stimulus money, and agreed that there was no question that W&C was going to continue doing work for the City towards applying for the stimulus money.

4

The mayor said that he knew that deadlines existed and knew that the project must be "shovel-ready by November 1[, 2009]."[2]

The mayor acknowledged that there was a council meeting attended by W&C representatives in September at which the mayor and council were told that W&C was going to have to do "engineering" for the project. The mayor said that he knew at that time that "there was a good deal more to be done." In addition, a tape was played for the jury of this September meeting of the city council at which W&C told the council about the work that had been completed and the work that still needed to be done in order to file the application for funds.

The jury returned a verdict in favor of W&C in the amount of $203,000. The City now appeals.

"Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. . . . The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed

_____

[2] It appears that, through no fault of W&C, the stimulus funds were exhausted before the City submitted its application.

to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motions for new trial and [j.n.o.v.] will not be disturbed." *Lofty v. Fuller*, 223 Ga. App. 95, 97 (477 SE2d 30) (1996).

1. The City contends that the trial court erred in allowing the claim for *quantum meruit* to go to the jury. First, we note that the verdict form does not show whether the award was made on the breach of contract claim or whether it was made on the basis of the quantum meruit claim. The City did not request special findings and did not object to the verdict form. This Court will not speculate as to the findings of fact supporting the verdict. *All Risk Ins. Agency v. Southern Bell Tel. &c. Co.,* 182 Ga. App. 190, 192 (355 SE2d 465) (1987).

Further, we reject the City's argument that *H. G. Brown Family, L.P. v. City of Villa Rica*, 278 Ga. 819 (607 SE2d 883) (2005), precludes claims of quantum meruit and unjust enrichment where an alleged contract between the municipality and a contractor is *ultra vires* and void. Although the trial court held that the June proposal was not a valid contract because it was not approved by a quorum of the city council, the City overlooks the fact that there was evidence submitted to the jury that the work was done in accordance with the May contract, which was a valid contract.

6

Further, it is well-settled law that "[w]here, as here, an 'agreement' exists to perform lawful services for a municipality but it is not otherwise enforceable as a valid express contract, a recovery in quantum meruit is authorized to the extent of the value of the benefit that the municipality receives." *Walston & Assoc. v. City of Atlanta*, 224 Ga. App. 482, 483 (480 SE2d 917) (1997)*; City of St. Marys v. Stottler Stagg & Assoc.*, 163 Ga. App. 45, 46 (292 SE2d 868) (1982); *City of Dallas v. White,* 182 Ga. App. 782, 783 (357 SE2d 125) (1987).

The City argues that it can no longer be held liable under the quasi-contractual theory of quantum meruit because the Supreme Court's holding in *H. G. Brown*, impliedly overruled the above cases. In *H. G. Brown*, the Court held that because the contract was not approved by a quorum of the city council before being signed by the mayor, "the City acted with a total absence of power and in direct contradiction to the strictures of its charter. Where, as here, a municipality contracts with a total absence of power, it is not estopped from denying the resulting agreement's validity." Id. at 821.[3] The City argues that in light of *H. G. Brown*, the reasoning in *City of St. Marys v. Stottler,* supra, no longer applies. In *Stottler*, this Court held:

_____

[3] *H. G. Brown* did not involve a claim of *quantum meruit*; the City made all payments due under the contract. Rather, *H. G. Brown* filed a petition for mandamus to compel the City to validate the contract. Id. at 819.

7

Quantum meruit is not available when a *county* is the defendant. This result is dictated by the *statutory requirements* for establishing a contract with a county. See Code Ann. § 23-1701 [now OCGA § 36-10-1] and Division 1. (Emphasis supplied.) *PMS Const. Co.*, 243 Ga. at 872 [257 SE2d 285], supra. We know of no "statutory requirements" for establishing a contract with a municipality which are comparable to those cited in *PMS Const. Co.* as precluding a quantum meruit recovery against a county. Indeed it appears to have long been the law that, under certain circumstances, quantum meruit is an available remedy against a municipality. Since the city could have legally contracted for the service it received, it would seem that an implied contract would arise to pay a reasonable value for such beneficial service. We find no decision in Georgia to prohibit it; and the many cases hereinabove cited and others, under the 'common-honesty rule,' intimate the liability of the city.

Id. at 47. (citations and punctuation omitted).

Contrary to the City's argument, there are still no statutory requirements for establishing a contract with a city. There is therefore, no reason to conclude that *Stottler* has been impliedly overruled.

2. The City also argues that the trial court erred in denying its motion for directed verdict on the claim for quantum meruit. "On appeal from the denial of a motion for a directed verdict or for j.n.o.v., we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether

8

there is any evidence to support the jury's verdict." *Terrell v. Pippart*, 314 Ga. App. 483, n. 1 (724 SE2d 802) (2012).

The essential elements of a claim for quantum meruit are: (1) the performance of valuable services; (2) accepted by the recipient or at his request; (3) the failure to compensate the provider would be unjust; and (4) the provider expected compensation at the time services were rendered. *Parris Props. v. Nichols,* 305 Ga. App. 734, 735 (700 SE2d 848) (2010). The evidence, as outlined above was sufficient to allow this claim to go to the jury.

Nevertheless, the City argues that the trial court erred in admitting evidence of the plaintiff's labor costs because this was not evidence of the value of the work to the City. The award in a quantum meruit claim is based on the "reasonable value" of the work. *Zampatti v. Tradebank Intl. &c. Corp.,* 235 Ga. App. 333, 340 (508 SE2d 750) (1998). "The finder of fact must determine in what amount the party receiving was benefitted or enriched by the materials and services." *Langford v. Robinson,* 272 Ga. App. 376, 380 (612 SE2d 552) (2005). In other words, for a plaintiff to recover on a claim for quantum meruit, the jury must find that the plaintiff performed services valuable *to the defendant* and that the defendant accepted those services. When that is shown, a promise is implied to pay the reasonable value of the services. OCGA §

9

9-2-7; *Nelson & Hill, P.A. v. Wood,* 245 Ga. App. 60, 62 (537 SE2d 670) (2000). "A party cannot receive and retain the benefit of another's labor without the duty to pay for the reasonable value of the work." *Langford*, supra at 380.

In this case, the value of the work was the City's opportunity to apply for stimulus grant money. It is true that "the reasonable value which the provider is entitled to recover in quantum meruit is not the value of the labor but the value of the benefit resulting from such labor to the recipient." *Hollifield v. Monte Vista Biblical Gardens,* 251 Ga. App. 124, 130 (553 SE2d 662) (2001). Here, the mayor responded "Yes" when asked: "[Y]ou were satisfied then and you're satisfied now that the City of Baldwin would benefit greatly from the improvements to this wastewater treatment plant?" Further, "Because it would have taken a big risk off the table. Is that correct?" Answer: "That is correct." Question: "And millions of dollars, I believe you told me?" Answer: "It had potential, depending on what the fines were from EPD."

Thus, in reaching its determination, the jury could find that the benefit conferred was the result of W&C's labor in putting together the application. There was therefore, some evidence that the value to the City was the opportunity to secure funds for renovation of the wastewater treatment plant.

This situation is similar to instances where an attorney is discharged prior to earning a contingency fee and this Court has held that the attorney is entitled to recover fees from the client based on quantum meruit. See, e.g., *Amstead v. McFarland*, 287 Ga. App. 135, 137 (650 SE2d 737) (2007). In those cases, the measure of damages is reasonable attorney fees. See *Greer, Klosik & Daugherty v. Yetman*, 269 Ga. 271, 274 (496 SE2d 693) (1998). Likewise, the fees charged for the time and effort expended by W&C were relevant to the value of the services rendered and the trial court did not err in admitting this evidence.

3. Next, the City argues that the trial court erred in allowing into evidence the June proposal. We disagree. The June proposal was relevant to W&C's claim for quantum meruit in that it detailed the scope of work to be carried out and it formed the basis for the updates given by W&C to the city council on the work being done. "Where the contract could have been, but was not, properly authorized, but the representative officials in whom the right to so contract is vested have knowledge of work which is being done on the authorization of one of themselves, allow it to continue, and thereafter accept the benefits thereof on behalf of the city, an implied ratification results which will render the governmental unit liable for the reasonable value of the goods or services so received and used by it." *City of Gainesville v.*

11

*Edwards,* 112 Ga. App. 672, 674 (145 SE2d 715) (1965). Accordingly, the June proposal was admissible and the trial court did not abuse its discretion in admitting it.

Further, the trial court gave a limiting instruction informing the jury that the June proposal was "not enforceable as a contract, and you should not consider it as such." The court stated "[t]hat document is admitted for the limited purposes of showing that certain officials of the City knew that the plaintiff was performing work on behalf of the City, what work was being done . . ., and that the plaintiff expected to be paid or compensated for that work." There was no error.

4. Next the City claims the trial court erred in allowing the jury to consider a breach of contract theory with regard to the second portion of the May contract which stated that additional services would be provided "[u]nder separate covers." "The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon." *Advance Security v. Superior Surgical Mfg. Co.*, 197 Ga. App. 769, 771 (399 SE2d 488) (1990)*; Touche Ross & Co. v. DASD Corp.,* 162 Ga. App. 438 (292 SE2d 84) (1982). Moreover, "[i]t is well-settled that the policy of the law is against the destruction of contracts on the ground of uncertainty if it is possible in the light of the circumstances under which the

12

contract was made to determine the reasonable intention of the parties." *Touche Ross*, supra at 439-440. "A contract will not be held unenforceable for indefiniteness because its performance is, as to particular details, left open to subsequent agreement of the parties. This is especially true where the contract provides the guidelines for the subsequent agreement." *Knoxville Med. Investors v. Nat. Healthcorp,* 192 Ga. App. 460, 462-463 (385 SE2d 110) (1989).

Because this is an appeal from the denial of a directed verdict, we review this under the "any evidence" standard. See *Cole v. Webb*, 267 Ga. App. 174, 176 (598 SE2d 886) (2004). In this case, there was sufficient evidence to allow this issue to go to the jury. Although the contract did not specify the amount to be paid W&C for additional work because the work was ongoing, there is nothing to show that the parties, based upon their past dealings, would not have been able to agree upon the fair price for W&C's services. See *McLean v. Continental Wingate Co.*, 212 Ga. App. 356, 359 (442 SE2d 276) (1994) (not unenforceable merely because the agreement did not contain a formula for the calculation of the profits to which McLean was entitled under its terms). "[I]t is only when the indefiniteness of the subject matter is so extreme as not to present anything upon which the contract may operate in a definite manner that the contract is rendered void." *Waugh v. Waugh*, 265 Ga. App.

13

799, 801 (595 SE2d 647) (2004). See *Quadron Software Intl. Corp. v. Plotseneder*, 256 Ga. App. 284, 289 (568 SE2d 178) (2002) (although parties left certain terms to be negotiated in the future, there was sufficient evidence from which the jury could find there was an enforceable contract); *Touche Ross*, supra at 440 (provision that "[d]etailed tasks will be mutually agreed [upon] . . . as the work progresses" does not destroy the requisite certainty for a valid agreement).

5. Next, the City claims that the trial court erred in charging the jury that a city may be held liable for value of the benefit received and also erred in failing to charge the jury that a city can only contract in the method prescribed in its charter. In light of our holdings above, we need not address this enumeration.

6. In its last enumeration, the City contends that the trial court erred in charging the jury on implied ratification and in failing to charge the jury that a party cannot accept services of which it is not aware, and the knowledge of an individual with no power to bind the city cannot be imputed to the City.

There was no error in the jury charge on implied ratification because it was a correct statement of the law and also was adjusted to the evidence at trial. See, e.g., *Thompson v. Princell*, 304 Ga. App. 256, 262 (696 SE2d 91) (2010).

14

The record shows that the City requested the following charge: "I charge you that a party may not accept services of which it was totally unaware. When an individual who had no authority to obligate the defendant on any contract with the plaintiff such that his dealings with the plaintiff were beyond the scope of his authority, the individual's knowledge of plaintiff's services cannot be imputed to the defendant as a matter of law."

"As we have held, if *any portion* of a requested charge is inapt, incorrect, misleading, confusing, argumentative, not precisely adjusted or tailored, or not reasonably raised or authorized by the evidence, denial of the charge request is proper." *Dept. of Transp. v. Patten Seed Co.*, 290 Ga. App. 532, 535-536 (660 SE2d 30) (2008). Here, the requested charge was argumentative and not adjusted to the evidence as set out above. There was no error.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*