**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 11, 2021**

# In the Court of Appeals of Georgia

A21A0260. THE RENEE GROUP, INC. v. CITY OF ATLANTA.

GOBEIL, Judge.

The Renee Group, Inc. ("RGI") appeals from the trial court's grant of summary judgment in favor of the City of Atlanta ("the City") on RGI's claim for promissory estoppel. RGI argues that the trial court erred in granting summary judgment to the City because: (1) the proposed agreement for the annual contract was not ultra vires in light of the City Council's approval; and (2) sovereign immunity does not bar RGI's equitable claims against the City. For the reasons set forth below, we affirm.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . Our review is de novo.

*Ambrose v. Sheppard*, 241 Ga. App. 835, 835-836 (528 SE2d 282) (2000) (citations, punctuation, and emphasis omitted).

Viewed in this light, the record shows that in May 2016, after an invitation from the City, RGI submitted a bid for a Department of Watershed Management sewer cleaning and pipeline assessment annual contract. RGI's bid contained representations about its experience, qualifications, and capacity to perform the work. RGI subsequently was recommended for award of the contract. RGI received a copy of the proposed agreement for the contract from the City Department of Procurement. The proposed agreement was signed by officials from the Department of Watershed Management, the Office of Contract Compliance, the Department of Finance - Risk Management, the Department of Procurement, and the Department of Finance. In the letter accompanying the proposed agreement, the Chief Procurement Officer advised RGI to return the five signature pages within five days along with the required insurance and bonding certificates. The proposed agreement included a copy of the resolution authorizing the Mayor of the City to enter into an agreement with RGI. The resolution was approved by the City Council per the City Charter Section 2-403. The resolution provided that the Commissioner of the Department of Watershed

Management and the Chief Procurement Officer recommended RGI for the award of the contract. The resolution specifically stated that

> the agreement will not become binding on the City and the City will incur no obligation or liability under it until the Annual Contract has been approved as to form by the City Attorney, executed by the Mayor, attested to by the Municipal Clerk and delivered to [RGI.][1]

RGI's chief executive officer and representative, a former attorney for the City's law department, was familiar with this type of resolution for contracting with the City. RGI's representative admitted that she reviewed the resolution included with the proposed agreement, and signed the agreement.

RGI forwarded the proposed agreement back to the City, after obtaining the required insurance, a bonding certificate, and the necessary equipment in its preparation to perform the contract. RGI never received a copy of the contract with the required signatures.

---

[1] This language was in accordance with Section 2-1102 of the City Code of Ordinances, which provides, in pertinent part, that an award

> means when legislation authorizing the award of the contract has been adopted by the council and approved by the Mayor, provided, however, that the contract will not become binding upon the city and the city will incur no liability under it until it has been duly executed by the contractor, returned to the city with all required submittals, including insurance and bonding, if applicable, executed by the Mayor, attested to by the municipal clerk, approved by the city attorney as to form and delivered to the contractor.

After reviewing the materials and based on what the City believed to be discrepancies and misrepresentations by RGI, the City decided to cancel the proposed agreement. The City subsequently sent RGI a letter cancelling the proposed agreement in accordance with the City Code of Ordinances Section 2-1194, which provides that "[a]n invitation for bids, a request for proposals or any other solicitation under this article may be canceled . . . , as may be specified in the solicitation, when it is in the best interest of the city."

RGI then filed an action against the City, alleging breach of contract and promissory estoppel. The City answered and filed a motion to dismiss the action for failure to state a claim. Following a hearing, the trial court granted the City's motion to dismiss the breach-of-contract claim because the City's prescribed method of contracting had not been met and therefore no contract existed between the parties, but denied the motion as to RGI's promissory estoppel claim. The trial court found that RGI could maintain a claim for promissory estoppel, despite the breach-of-contract claim failing for lack of all the required signatures.

The City then filed a motion for summary judgment, asserting that RGI could not meet its burden in showing promissory estoppel. After a hearing and briefing regarding the case of *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19 (743

4

SE2d 381) (2013), the trial court granted the City's motion for summary judgment. Specifically, the trial court found, relying on *City of Baldwin*, that because the City's prescribed method of contracting had not been satisfied, the proposed agreement was ultra vires and a nullity, and therefore, the equitable remedy of promissory estoppel was not allowed. Alternatively, the trial court stated that RGI's equitable claims were barred by sovereign immunity. This appeal followed.

1. RGI argues that the trial court erred in granting the City's motion for summary judgment on its claim for promissory estoppel in reliance on *City of Baldwin* because the proposed agreement at issue here was not ultra vires since the City Council approved the agreement. We disagree.

To establish a claim for promissory estoppel, the plaintiff must show that the defendant made the plaintiff a promise, that the defendant expected the plaintiff to rely on that promise, that the plaintiff did, in fact, rely upon it, and that injustice may be avoided only by enforcing the defendant's promise. *Ambrose*, 241 Ga. App. at 837; OCGA § 13-3-44 (a). However, to determine whether promissory estoppel is a potential remedy in this case, we must first decide if the City's proposed agreement was ultra vires. See *City of Baldwin*, 293 Ga. at 28 (2) (c) (if a proposal is ultra vires, recovery under an equitable doctrine like estoppel is not allowed).

5

A municipality has no inherent power; it may only exercise power to the extent it has been delegated authority by the state. A municipality's allocations of power from the state must be strictly construed. Accordingly, we have long recognized that a municipality's ability to enter into contracts is limited. It is established that a municipal corporation may bind itself by, and cannot abrogate, any contract which it has the right to make under its charter. However, if a local government enters a contract in abrogation of its delegated power or in excess of its authority to enter contracts, then the contract is deemed ultra vires and void.

*H.G. Brown Family, L.P. v. City of Villa Rica*, 278 Ga. 819, 819-820 (1) (607 SE2d 883) (2005) (citations and punctuation omitted). Furthermore,

where a city charter specifically provides how a municipal contract shall be made and executed, the city may only make a contract in the method prescribed; otherwise, the contract is invalid and unenforceable. A municipality's method of contracting, once prescribed by law or charter, is absolute and exclusive.

*City of Baldwin*, 293 Ga. at 26 (2) (b).

Thus, the focus in this case is whether the City followed its prescribed method of contracting and authorized the proposed agreement. It is clear from the evidence presented that the City had a prescribed method for entering contracts as set forth in Section 2-1102 of the City Code of Ordinances, and which was conveyed to RGI via the resolution. While RGI concedes that it never receive the proposed agreement with the required signatures and RGI's CEO was aware of the City's prescribed method

of contracting, it maintains that the failure to obtain those signatures was merely a procedural irregularity given the City Council's approval of the resolution and proposed agreement. As *City of Baldwin* explains, this distinction is significant because a mere procedural irregularity may not render an agreement ineffective.

In *City of Baldwin*, our Supreme Court reiterated that "a contract is ultra vires and an absolute nullity if a local government enters it in abrogation of its delegated power or in excess of its authority to enter contracts, but that a contract may not be completely ineffective if it had merely been imperfectly or irregularly executed." 293 Ga. at 24 (2) (a) (citation and punctuation omitted). In *City of Baldwin*, the court concluded that the particular proposal at issue was ultra vires and a nullity. Id. at 27-28 (2) (c). That case involved two proposals by the plaintiff to the City of Baldwin. Id. at 20-22 (1) (a). Similar to the City of Atlanta, the City of Baldwin had a prescribed contracting process. Specifically, the City of Baldwin's charter then in effect provided:

> [n]o contract with the city shall be binding on the city unless the contract is in writing, is signed after review by the city attorney, and is approved by the city council subsequent to its signature by the city attorney, with such council approval entered on the council journal.

Id. at 20 (1) (a). The first proposal was approved by the city council. Id. However, the second proposal was signed by the mayor under an "Authorization to Proceed," but was not dated. Id. at 21 (1) (a). Although the second proposal was never signed by the city attorney or approved by the city council, the plaintiff commenced work. Id. The plaintiff eventually sent the City of Baldwin an invoice for the work it had completed. Id. at 21-22 (1) (a). The City of Baldwin denied payment, and the plaintiff filed suit for breach of contract under each agreement and, alternatively, quantum meruit. Id. at 22 (1) (b).

As to the second proposal, the trial court granted the City of Baldwin's motion for summary judgment as to the breach of contract claim; however, the quantum meruit claim went to trial. *City of Baldwin*, 293 Ga. at 22 (1) (b). The jury returned a verdict in favor of the plaintiff, and the City of Baldwin appealed. Id. This Court affirmed. Id. at 22-23 (1) (b); *City of Baldwin v. Woodard & Curran, Inc.*, 316 Ga. App. 768 (730 SE2d 486) (2012).

On certiorari, our Supreme Court reversed with regard to the second proposal, concluding that the mayor had no power to bind the City of Baldwin unilaterally because the city charter plainly stated that no contract with the city would be binding unless it was approved by the city council. Id. at 27 (2) (c). Because the city council

8

never approved the second proposal as required, the mayor executed it without the power to bind the city. Id. Accordingly, there was no mere procedural irregularity, there was a complete lack of approval needed to bind the city, rendering the proposal ultra vires and void. Id. Thus, the Court held:

> [i]n this situation, recovery under an equitable doctrine like quantum meruit or estoppel is not allowed, even though the party seeking damages has performed its part of the bargain and might even have relied upon the contract to its detriment.

Id. at 28 (2) (c) (citation and punctuation omitted).

Here, RGI urges that the fact that the City Council approved the resolution authorizing the Mayor to enter into the proposed agreement with RGI requires a different outcome from *City of Baldwin*. While the key to making a contract binding on the City of Baldwin was approval by the city council, here there also needed to be approval by the City Attorney, execution by the Mayor, and attestion to by the Municipal Clerk. None of those requirements were met. Although other signatures were present on the proposed agreement, the signatures required to bind the City were not. See id. at 28-29 (2) (c) ("The actions of individual city officials who are not empowered to act on behalf of the city in such matters cannot be relied upon by others to commit the government's resources, regardless of good intentions."). Obtaining the

9

mandatory signatures to bind the City (as required by Section 2-1102 of the City Code of Ordinances and the resolution approved by the City Council) is more than just a procedural irregularity here, it is a substantive and fundamental step required by law to bind the City. As in *City of Baldwin*, because the prescribed method of contracting was not satisfied, the proposed agreement was ultra vires and a nullity. And, as the *City of Baldwin* Court emphasized, if an agreement is ultra vires, it cannot be given any legal effect "whatsoever." *City of Baldwin*, 293 Ga. at 25 (2) (a). To deem such an agreement effective "in any sense, even quasi-contractually would amount to permitting the local government to expand its own powers rather than requiring it to rely upon state legislative delegation." Id. (citation and punctuation omitted). Consequently, the trial court did not err in disallowing a claim for promissory estoppel in reliance on *City of Baldwin.*

2. Given our disposition in Division 1, we need not address RGI's remaining argument regarding sovereign immunity.

*Judgment affirmed. Barnes, P. J., and Markle, J., concur.*

10